IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRANDON CUMMINGS,

                Plaintiff,

   vs.                                             CIVIL NO.  02-683 PJK/LFG

CITY OF ALBUQUERQUE et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY

THIS MATTER is before the Court on Plaintiff's Motion to Compel Discovery by Defendant City of Albuquerque [Doc. 19].  The Court considered the motion together with Defendant's response in opposition.  Plaintiff failed to file any reply and, therefore, failed to challenge any of Defendant's factual representations contained in the affidavits appended to Defendant's response.

Plaintiff Brandon Cummings ("Cummings") seeks to bring a class action lawsuit against the City of Albuquerque, its current and former Chiefs of Police, as well as individual City police officers. He claims that an item of his personal property, a .40 caliber Glock handgun, rounds of ammunition and a holster were seized by City police.  Subsequently, when no criminal charges were filed, he sought to recover his property and contends that the property was not initially returned.

At the Rule 16 conference and now, by pleadings, Cummings concedes that all property was returned save for the weapon's magazine which could not be located.  Thus, the only item of property missing is the magazine clip for his weapon.  He claims that the value of the magazine is between $100 and $125.[1]

---

[1] Internet listings and price estimates from local gun shops place the value of a replacement magazine for a .40 caliber Glock at $25.

The parties dispute how the City came into possession of the weapon.  Cummings' version is that the weapon was seized from his vehicle during a traffic stop.  Defendants, on the other hand, contend that they came into possession of the gun after they were contacted by Cummings' girlfriend.  She is alleged to have contacted the police out of fear for her safety as Cummings was being released from the Bernalillo County Detention facility and demanded that she bring him his weapon.  She allegedly requested that the police maintain the weapon for safekeeping.

Subsequent to the City officers' taking possession of the weapon, Cummings sought to regain custody of his weapon.  Defendants assert that a numerical error in the officer's report resulted in the City not being able to link the weapon with a report, and, consequently, the weapon was not returned to Cummings until he filed suit.[2]

Cummings contends that the City maintains a custom, policy and procedure regarding the maintenance and possession of non-evidentiary property, and that this custom, policy and procedure result in widespread deprivation of citizen's property rights.  He further contends that his own constitutional rights, as well as those of similarly situated class members, have been violated as they have been deprived of their property without due process of law.  Cummings wishes to proceed on a class action lawsuit involving the alleged unconstitutional deprivation of citizens' property without due process of law.

Cummings' request to elevate this single incident involving an alleged deprivation of his property into a proposed class action lawsuit may well be based on the recognition that the United States Supreme Court held:

---

[2]As additional grounds for the delay in returning the weapon, the City reports that the officer who seized the firearm was also a member of the National Guard whose unit was activated after the terrorist attacks in the United States on September 11, 2001.  His active duty is not specifically argued as the reason for the delay, but only as a contributing factor.

Courts have long recognized that *de minimis* property interests do not trigger procedural due process violations. *See* Goss v. Lopez, 419 U.S. 565, 576, 95 S. Ct. 729 (1975). *See also* Dill v. City of Edmond, Okla., 155 F.3d 1193, 1207 (10th Cir. 1998).

Cummings may thus be hard pressed to argue that the deprivation he suffered, i.e., delay in recovering his pistol or the loss of the magazine clip is any more than a *de minimis* property interest.

So as to obtain support for his motion for class certification, Cummings served discovery requests on Defendant City of Albuquerque. The requests are broad and sweeping. For example, in Interrogatory Number One, Cummings seeks the following:

1. Please identify each and every item of private property confiscated, seized, and/or taken into custody by the Albuquerque Police Department within the last five (5) years, and for each such, state:

a) The full name, address and telephone number of the person from whom the property was confiscated and/or taken into possession;

b) The full name of, address, and telephone number of the owner or suspected and/or believed owner of the subject property;

c) The full name of, address, and telephone number of any person who may have, might have, or did claim ownership, in whole or in part, of the aforementioned property, the owner or suspected and/or believed owner of the subject property:

d) A complete description of the location from which said property was taken into possession and/o[r] confiscated;

e) A complete description of all such property;

f) The date and time that said property was confiscated and/or taken into possession;

g) All incident and/or report or other identification or tracking numbers assigned to the aforementioned property, person(s), or confiscation and/or possession of said property;

h) A chronological description and/or narrative explanation of all actions taken with regard to the subject property, beginning with the moment of seizure, confiscation, or acquisition of possession and extending through the present. Please include the names, badge numbers, contact information, and ranks

3

of all Albuquerque Police Department officers involved in each such description/explanation.

i)  The nature of the involvement of each person identified in Interrogatory No. 2, below, in each in the incident described in Interrogatory No. 1, part g, above, including but not limited to the specific actions taken by each individual;

j)  The present status, disposition, and/or location of all such property;

k)  The proper procedure, as you understand it, to handle, possess, return, maintain, notify owners or suspected owners of said property that it was in the possession of the Albuquerque Police Department, the proper steps for owners to take to secure the return of said property, the procedure for destroying or disposing of said property (if any), and/or regarding in any manner said property;

l)  Any analysis and/or description of how each such policy affected, related to, or addressed each instance identified in your answer to Interrogatory No. 1, part g, above; and

m)  An analysis and/or description of the manner in which each such policy was and/or was not followed in each instance identified in your answer to Interrogatory No. 1, part g, above.

Cummings' Interrogatory Number Two is equally as sweeping in scope and detail. It requires the following:

Please identify all officers by name, rank, badge number, date of hire, date of termination (if any), present place of employment, present telephone number at place of employment, present official title and/or last official title prior to termination (if any), who were, are, or may have been employed by the Albuquerque Police Department within the last five (5) years and who have, had, or may have had working with or dealing with the possession, maintenance, return, the notification of owners or suspected owners of said property that Albuquerque Police Department possessed said property, and/or disposal of private property as part of their routine duties.

Beyond asking for all of the detailed information concerning each and every employee who has worked for the Albuquerque Police Department for the last five years, Cummings' Interrogatory

4

Number Four then seeks:

> This Interrogatory concerns each person identified in Interrogatory No. 2, above.  Regarding written or other educational material you have received pertinent to relating to the confiscation and/or acceptance of property from a citizen and/or the possession of any such property and/or the return of any such property and/or the disposal of any such property and/or the notification of owners or suspected owners of said property that Albuquerque Police Department possessed said property, including the period of your original training and any subsequent materials during the term of your service as a police officer, please state:
>
> > a)  The title, author and publication date of each such piece of material;
> > b)  The date when such material was given to you to read;
> > c)  Whether you actually read each such piece of material; and
> > d)  A two-to-three sentence synopsis of all such material.

### <u>Analysis</u>

Cummings' discovery requests are deficient for a number of reasons.  First, they violate the Court's scope of discovery in that the Court specifically limited discovery to matters arising under Fed. R. Civ. P. 23, that is, commonality, numerosity, typicality, and adequacy of representation. The interrogatories served are broad enough to cover merits discovery.  For example, obtaining training records or disclosing specific training received on property seizures does not go to commonality or typicality of claims; rather, it goes to the question of duty and breach of duty.  The Court did not authorize merits discovery.

Second, Cummings' discovery requests violate a specific interrogatory limitation, including sub-parts, which were imposed on the parties.  Cummings was authorized twenty-five interrogatories, including sub-parts.  Even the first interrogatory, when sub-parts are added, exceeds by far the numerical limitation imposed by the Court.  Cummings neither sought nor obtained the Court's

permission to exceed the numerical limitation on interrogatories prior to serving this set.

Third, and perhaps most importantly, Cummings' discovery requests are outrageously broad and expansive.

Cummings argues that under Rule 26, a party is entitled to discovery of "any matter not privileged, which is relevant to the subject matter involved in the pending action."  Cummings is correct in arguing that discovery in federal proceedings should be construed broadly.  However, discovery is not without limits.

Rule 26 expressly contemplates the limitation of discovery if the burden or expense of the proposed discovery outweighs its likely benefits.  The Court should "[t]ak[e] into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(iii); Burka v. U.S. Dept. of Health & Human Services, 87 F.3d 508, 517 (D.C. Cir. 1996).  Moreover, Rule 26 specifically authorizes a court, in the exercise of its discretion, to deny discovery completely, to limit the conditions, time, place or topics of discovery, or to limit the manner in which the information is to be revealed.  Burka, 87 F.2d at 518.

Thus, the Court is mindful of the need to balance one party's right of discovery with the opposing party's right to be free from intrusive and burdensome discovery, and in this case prohibitively expansive discovery.  Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir.), *cert. denied*, 531 U.S. 926, 121 S. Ct. 302 (2000).  "Indeed, the 1983 and 1993 Advisory Committee Notes [to Rule 26(b)(2)(iii)] indicate this sub-section was added to encourage judges to be more aggressive in identifying and discouraging discovery overuse and 'to enable the Court to keep tighter reign on the extent of discovery.'"

Abusive discovery, such as that served by Cummings in this case, is representative of unchecked litigation practices that significantly increase the costs of litigation, congest court dockets, and contribute to delay the final disposition of litigation. Due to these kinds of discovery abuses, Congress enacted the Civil Justice Reform Act of 1990 ("CJRA"), 28 U.S.C. § 471 *et seq.* The goals of the CJRA are to expedite the ultimate disposition of litigation and to reduce costs. These goals are accomplished by close judicial scrutiny of the discovery process, establishment of case management deadlines, and utilization of alternative dispute resolution procedures.

After the adoption of the CJRA, the Federal Rules of Civil Procedure were modified to dovetail with the CJRA. Rule 1 of the revised rules adopts the identical two-prong CJRA goals as part of the Rules' purpose. "They [civil rules] shall be construed and administered to secure the just, speedy and inexpensive determination of every action."

Recent modifications to the federal rules further limit the scope of discovery. For example, Rule 26 previously provided, "Parties may obtain discovery regarding any matter, not privileged . . . ." The revised rule not provides, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." This rule change signals a narrower scope of permissible discovery than existed before. Therefore, a party is not permitted to plead its allegations in indefinite terms and then conduct broad discovery hoping to benefit from a fishing expedition. Koch 203 F.3d at 1238; Fed. R. Civ. P. 26, Advisory Committee Notes.

In this case, Defendant's appended affidavit testimony indicating that the Albuquerque Police Department evidence unit on average collects approximately 2,900 items of property per month. Cummings requested detailed information on each item of property seized by the Albuquerque Police Department each month for the last five years, including specific information on the proverbial "who, when, where, why and how" questions. Thus, Cummings requests detailed information on

7

approximately 174,000 (2,900 times 12 months times 5 years) items which have been tagged into evidence or held by police.  (Ex. F, Affidavit of Art Acosta).

Mr. Acosta, who signed the City's affidavit, testifies that in order to even begin to search for the information requested in the interrogatories, personnel from the City's evidence unit would have to search through 174,000 pieces of evidence and review the evidence tag for the information sought in the interrogatories.  The affidavit further indicates that the information Cummings requested could not even be obtained from a review of the evidence tag.  As the information sought requires extraction of documents from police reports and numerous other sources of information, the Defendant would not only have to review the evidence tags, but also review 174,000 separate police reports where evidence has been tagged.  (Affidavit of Art Acosta).  Some of the information sought by Cummings would somehow have to be "devined" by the City.  For example, Cummings seeks but offers no suggestion on how the City is to determine the existence of persons who in the past claimed ownership, or who are in a position to claim ownership, or who might ever claim ownership.  Nor does Cummings offer an explanation as to why past owners of property are relevant at all to any claims or defenses.

The City submitted sworn testimony that during the last calendar year, the Albuquerque Police Department Records Division collected close to 160,000 police reports.  Assuming that is an annual average based on Cummings' request for information, Albuquerque Police Department would have to review 160,000 times five years' worth of reports, or approximately 800,000 police reports to attempt to glean the information Cummings seeks.  Police reports are not retrievable by whether property was or was not seized, therefore, all reports would have to be reviewed.

As Cummings filed no reply, those factual representations are not rebutted.  Therefore, the testimony before the Court is that the Defendant would have to review the 800,000 police reports

8

in an effort to locate the specific 174,000 police reports that involve cases where evidence has been tagged. (Affidavit of Art Acosta). Once the reports and property are identified, Defendant's work is just beginning. A simple review of Interrogatory One demonstrates that Cummings seeks an in-depth analysis of every item of property seized. One would presume that this would encompass every vehicle towed because a driver had no insurance, to every can of beer which the officer directed that some underage college student pour out. The sheer magnitude of Cummings' requests would keep an army of police record clerks, police officers, evidence room custodians, lawyers and paralegals busy for weeks, if not months.

Defendant further argues, and Cummings does not rebut, that the New Mexico Arrest Records Information Act contains certain exceptions, but outside those exceptions, disclosure of arrest record information that reveals sources, methods, information, individuals accused but not charged, etc., would violate provisions of State law. Therefore, in attempting to produce all this information, Defendant may run afoul of statutory restrictions. Obviously documents and information produced pursuant to a court order would insulate the City from liability. The City offers this argument, however, to demonstrate the sensitive nature of some of the information sought.

Defendant also submits items of correspondence where it requested that Cummings narrow his information requests in an effort to provide discovery that may be necessary for class certification. Notwithstanding Defendant's good-faith efforts, Cummings failed to respond to the Defendant's overtures and invitations. Indeed, in one letter to counsel, Defendant stated:

> The City would be willing to pull the APD reports for the past five years to try to search for this information that you request if you are willing to pay for the costs of the reports as well as other labor costs associated with reviewing all the information. You may also go to APD records and request all of the reports that have ever been written for the past five years and copy and review them, at Plaintiff's expense, for the information that you seek.

9

Defendant's offers went unheeded, and rather than seeking a way to cooperate with opposing counsel or narrow discovery requests, Cummings failed to even acknowledge receipt of Defendant's proposal.

In considering the Court's options under <u>Burka v. U.S. Dept. of Health & Human Services</u>, the Court has taken into account the needs of the parties. Here, Cummings has numerous alternative sources to obtain information that go to numerosity, typicality, commonality, or adequacy of representation, that would not require the significant burden and expense of the proposed discovery. Cummings declined to utilize alternative methods of securing necessary information and has declined to narrow his requests into something more reasonable and manageable.

The Court has further considered the amount in controversy. As indicated, it appears that Cummings' claims are *de minimis*. His own estimate of the value of the lost magazine is $125 at the high end or, perhaps, as little as $25 at the low end. Thus, the value of this case, at least as it relates to individual relief, simply does not warrant the substantial expensive and burdensome discovery demanded by Cummings.

The Court takes into account the parties' resources and notes that while the City has greater resources than Cummings, recent published newspaper reports also indicate that the City of Albuquerque is in financial straits and its economic crisis may well result in the curtailment of City services and closure of numerous City programs.[3]

---

[3] *See, e.g.,* <u>Albuquerque Journal</u>, April 22, 2003 article reporting cutbacks on social services, swimming pool hours of operation, public library restrictions, and City sponsored day care. The article notes that the City faces a 25 million dollar budget deficit. This article appears on the same day in which a second story ran concerning a group of investors who defaulted on an 8 million dollar obligation to the City, and, now, the City's taxpayers must make good on the defaulted development bond obligations.

The Court also considers the importance of the issues at stake in the litigation, and notes that both the United States Supreme Court and our own Tenth Circuit have determined that the deprivation of *de minimis* property interests do not implicate due process considerations.  <u>Goss v. Lopez</u>; <u>Dill v. City of Edmond, Okla</u>.  Thus, this case doe not rank high on the scale of egregious deprivations of constitutional rights.

After consideration of the needs of the parties, the Court will not require Defendant to produce the requested information.[4]  As proposed by Defendant, Cummings is free to secure, at his own expense, copies of all police reports that have been written for the past five years and is free to copy them.  These reports then would likely provide information on numerosity, commonality and typicality.  Alternatively, if Cummings prefers that the City provide the information, the Court will require that the City submit an affidavit from an appropriate official indicating the estimated costs of producing the information sought by Cummings.  The Court will then require that Cummings pay in advance the total cost of providing the information.  Upon payment, the Court will then direct the City to provide the requested information.

Lorenzo F. Garcia
Chief United States Magistrate Judge

---

[4]The Court is not denying discovery, it is denying *unreasonable* discovery.  Should Cummings substantially narrow discovery requests, he is permitted to proceed with reasonable discovery.

11